UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RICHARD YEOMAN** ) | Case Number |
| ) | |
| **Plaintiff** ) | |
| ) | **CIVIL COMPLAINT** |
| vs. ) | |
| ) | |
| **NORTHSTAR LOCATION** ) | **JURY TRIAL DEMANDED** |
| **SERVICES, LLC** ) | |
| ) | |
| **Defendant** ) | |

## COMPLAINT AND JURY DEMAND

**COMES NOW,** Plaintiff, Richard Yeoman, by and through his undersigned counsel, Brent F. Vullings, Esquire of Warren & Vullings, LLP, complaining of Defendant and respectfully avers as follows:

### I.  INTRODUCTORY STATEMENT

1. Plaintiff, Richard Yeoman, is an adult natural person and brings this action for actual and statutory damages and other relief against Defendant for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive and unfair practices.

### II.  JURISDICTION

2. Jurisdiction of this court arises under 15. U.S.C. § 1692k(d) and 28 U.S.C. §1337.

3.     Venue in this District is proper in that the Defendant maintains a registered office in this District.

### III.    PARTIES

4.     Plaintiff, Richard Yeoman ("Plaintiff") is an adult natural person residing at 1195 Cochran Road, Belden, MS 38826. At all times material and relevant hereto, Plaintiff is a "consumer" as defined by the FDCPA, 15 U.S.C. § 1692a (2).

5.     Defendant, Northstar Location Services, LLC. ("Defendant"), at all times relevant hereto, is and was a limited liability corporation engaged in the business of collecting debt within the State of Mississippi and the Commonwealth of Pennsylvania with its principal place of business located at 4285 Genesee Street, Cheektowaga, NY 14255 and a registered office located at 116 Pine Street, Suite 320, Harrisburg, PA 17101.

6.     Defendant is engaged in the collection of debts from consumers using the mail and telephone. Defendant regularly attempts to collect consumer debts alleged to be due to another. Defendant is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

### IV.    FACTUAL ALLEGATIONS

7.     In or around April, 2010, the Plaintiff began receiving phone calls from the Defendant regarding an alleged debt due to Bank of America for an approximate $5,600.00.

8. During the first phone call the Plaintiff had with the Defendant, the Plaintiff agreed to a settlement of $3,000.00 to be withdrawn from his bank account contingent on the Plaintiff being able to withdraw the necessary funds from his 401k.

9. The Defendant agreed to the arrangement and would accommodate the Plaintiff by setting up another plan, should the current arrangement fall through.

10. The Plaintiff was unable to follow through and could not retrieve the funds from his 401k. The Plaintiff contacted the Defendant right away to inform the Defendant of the issue and to work on a new plan.

11. The Defendant's agent, this time, was less than willing to help the Plaintiff set up a new arrangement as promised by the first agent.

12. The Defendant's agent accused the Plaintiff of trying to "skate" the alleged debt and that the Defendant will withdraw the amount previously arranged on the initial agreed upon date.

13. The Plaintiff took the Defendant's threat seriously and decided to put a stop on his bank account and close it in fear that the Defendant was going to attempt to withdraw funds that the Plaintiff did not have.

14. In or around May 2010, the Defendant contacted the Plaintiff and angrily questioned the Plaintiff on the closed account.

15. The Plaintiff explained to the Defendant that he will agree to pay but only if he can do so via money orders. The Plaintiff was apprehensive in giving the Defendant his new bank account information due to the fact that the Defendant previously attempted to withdraw funds without the Plaintiff's permission.

16. The Plaintiff proceeded to send the Defendant a money order in the amount of $150.00.

17. In or around June 2010, the Plaintiff contacted the Defendant notifying the Defendant that he will be sending his next payment of $150.00, again, via money order. The Defendant's agent was not willing to agree to the acceptance of a money order and demanded that the Plaintiff give the Defendant his bank account information and that the Plaintiff needed to pay that day.

18. The Plaintiff told the Defendant that he will not give the Defendant his bank account information and that the Plaintiff agrees to pay but only by using a money order. The Defendant's agent, continued to harass the Plaintiff for the information and the fact that the Plaintiff was willing to pay by another method, was not good enough for the agent.

19. In or around June 2010, the Plaintiff sent a letter via certified mail to the Defendant requesting validation of the alleged debt as well as that the Defendant cease all further communication until the request was fulfilled. **See Exhibit "A" attached hereto.**

20. The Defendant then sent the Plaintiff copies of the Plaintiff's original statements from Bank of America showing that the alleged debt was due to Bank of America. **See Exhibit "B" attached here to.**

21. The Defendant's calls continued, becoming more harassing an more degrading toward the Plaintiff.

22. On or around August 24, 2010, the Defendant contacted the Plaintiff's in-laws.

23. The Plaintiff sent out a second notice to the Defendant, on or around August 20, requesting the same information as the previous letter but that the Defendant provide proof that the alleged debt is owed to the Defendant, not Bank of America. **See Exhibit "C" attached hereto.**

24. On or around August 27, 2010, the Defendant contacted the Plaintiff's parents. The Defendant knew the Plaintiff's contact information therefore, the Defendant should not be contacting any other party than the Plaintiff.

25. The Defendant ceased collection efforts until sending the Plaintiff a notice, as requested, regarding the alleged debt in the amount of $5,564.75. **See Exhibit "D" attached hereto.**

26. The Defendant then began to contact the Plaintiff via telephone calls once again.

27. On or around September 16, 2010, the Defendant contacted the Plaintiff at the Plaintiff's place of employment claiming to be a representative from Bank of America stating that they are willing to accept a settlement in the amount of $2,000.00.

28. The Plaintiff told the agent that he would agree to the said settlement if they could provide the Plaintiff with the necessary documentation.

29. The agent got annoyed by the Plaintiff's request and refused to provide any such documentation.

30. The Plaintiff told the agent that he would agree to pay the original creditor but not the Defendant due to the way the Plaintiff had been treated.

31. The agent asked the Plaintiff, "What is the difference whether the Plaintiff paid Bank of America or the Defendant?"

32. The Plaintiff told the Defendant's agent that the Plaintiff would comply with the settlement once the Defendant agreed to send the documentation requested multiple times by the Plaintiff.

33. The Defendant continued to harass and degrade the Plaintiff by calling the Plaintiff a "loser," that the Plaintiff was "trying to skate" the alleged debt and that the Plaintiff had no intentions on ever paying. The Defendant then told the Plaintiff that the original amount will double to the amount of $10,000.00 if the Plaintiff did not pay within three days of the conversation.

34. The Plaintiff replied to the Defendant's agent by stating that he would certainly comply once the proper information is provided. The agent then proceeded to hang up on the Plaintiff.

35. The Plaintiff sent a third notice to the Defendant via certified mail. **See Exhibit "E" attached hereto.**

36. The Plaintiff was at no time trying to avoid paying the alleged debt but felt that the Defendant handled the situation in an unprofessional manner and the Plaintiff was trying to protect his bank account information.

37. The Defendant continues to contact the Plaintiff on the Plaintiff's cell phone as well as at the Plaintiff's place of employment.

38. The Defendant acted in a false, deceptive, misleading and unfair manner by threatening to take action that it did not intend to take for the purpose of coercing Plaintiff to pay the debt.

39. The Defendant knew or should have known that their actions violated the FDCPA. Additionally, Defendant could have taken the steps necessary to bring their and their agent's actions within compliance of the FDCPA, but neglected to do so and failed to adequately review those actions to insure compliance with the law.

40. At all times pertinent hereto, Defendant was acting by and through it agents, servants and/or employees, who were acting with the scope and course of their employment and under the direct supervision and control of Defendant herein.

41. At all times pertinent hereto, the conduct of Defendant as well as its agents, servants and/or employees, was malicious, intentional, willful, reckless, negligent and in wanton disregard for federal and state law and the rights of the Plaintiff herein.

42. As a result of Defendant's conduct, Plaintiff has sustained actual damages, including, but not limited to, injury to Plaintiff's reputation, invasion of privacy, damage to Plaintiff's credit, out-of-pocket expenses, physical, emotional and mental pain and anguish and pecuniary loss and he will continue to suffer same for an indefinite time in the future, all to his great detriment and loss.

## COUNT I – FDCPA

43. The above paragraphs are hereby incorporated herein by reference.

44. At all times relevant hereto, Defendant was attempting to collect an alleged debt which was incurred by Plaintiff for personal, family or household purposes and is a "debt" as defined by 15 U.S.C. § 1692a(5).

45. The foregoing acts and omissions constitute violations of the FDCPA, including but not limited to, violations of:

| | | |
|---|---|---|
| §§ 1692b(1) | Contact of Third Party: Failed to identify themselves, or failed to state that collector is confirming or correcting location information |
| §§ 1692c(a)(1) | At any unusual time, unusual place, or place known to be inconvenient to the consumer |
| §§ 1692c(c) | After written notification that consumer refuses to pay debt, or that consumer wants collector to cease communication |
| §§ 1692d | Any conduct the natural consequence of which is to harass, oppress or abuse any person |
| §§ 1692d(2) | Profane or other abusive language |
| §§ 1692d(5) | Caused the phone to ring or engaged any person in telephone conversations repeatedly |
| §§ 1692e | Any other false, deceptive, or misleading representation or means in connection with the debt collection |
| §§ 1692e(2) | Character, amount, or legal status of the alleged debt |

|  |  |
|---|---|
| §§ 1692e(10) | Any false representation or deceptive means to collect a debt or obtain information about a consumer |
| §§ 1692e(14) | Any name other than the true name of the debt collector's business |
| §§ 1692f | Any unfair or unconscionable means to collect or attempt to collect the alleged debt |
| §§ 1692f(1) | Attempt to collect any amount not authorized by the agreement creating the debt or permitted by law |

**WHEREFORE**, Plaintiff respectfully requests that this court enter judgment in his favor and against Defendant, Northstar Location Services, LLC and Order the following relief:

a. Actual damages;

b. Statutory damages pursuant to 15 U.S.C. §1692k;

c. Reasonable attorney's fees and costs of suit pursuant to 15 U.S.C. §1692k; and

d. Such addition and further relief as may be appropriate or that the interests of justice require.

## V. JURY DEMAND

Plaintiff hereby demands a jury trial as to all issues herein.

**Respectfully submitted,**
**WARREN & VULLINGS, LLP**

Date:   September 28, 2010

BY: /s/ Brent F. Vullings

Brent F. Vullings, Esquire
Warren & Vullings, LLP
1603 Rhawn Street
Philadelphia, PA  19111
215-745-9800    Fax 215-745-7880
Attorney for Plaintiff